**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TEDDY T. ATKINSON,**

                      **Petitioner,**                    **05-CV-286**
                                                                         **[95-CR-232(S2)]**

      **v.**

**UNITED STATES OF AMERICA.**

                      **Respondent.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

      Teddy T. Atkinson ("Petitioner") filed the instant motion pursuant to 28 U.S.C. § 2255 challenging his criminal conviction and sentence. For the reasons that follow, the motion is denied and his petition is dismissed. Further, Petitioner's motions for appointment of counsel and to proceed *in forma pauperis* are denied.

**II. BACKGROUND**

      On June 26, 1995, Petitioner and approximately forty other people were indicted for various narcotics, weapons, and conspiracy charges arising out of their participation in what has been referred to as the Joyner Organization. See United States v. Joyner, 201 F.3d 61, 66-68 (2d Cir. 2000)("Joyner I"). Petitioner was charged with engaging in a continuing criminal enterprise (CCE)

1

in violation of 21 U.S.C. § 848(a) and (c) and 18 U.S.C. § 2; conspiracy to possess with intent to distribute and distribution of cocaine, heroine, and marijuana in violation of 21 U.S.C. § 846; possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); and criminal forfeitures pursuant to 21 U.S.C. § 853. After a majority of the co-defendants pled guilty to various charges, Petitioner was tried with six co-defendants in an eight week jury trial from April 2, 1996 to June 4, 1996. Petitioner was convicted of the CCE, drug trafficking conspiracy, possession of cocaine with intent to distribute and cocaine distribution counts. He was sentenced primarily to 292 months of imprisonment.

Petitioner and other defendants appealed their convictions and sentences to the United States Court of Appeals for the Second Circuit ("Second Circuit"). The Second Circuit upheld Petitioner's CCE conviction but vacated the drug conspiracy conviction because a drug conspiracy is a lesser included offense of a CCE. See United States v. Joyner, 201 F.3d 61, 67 (2d Cir 2000)(citing Rutledge v. United States, 517 U.S. 292 (1996)). Additional appellate arguments were considered and rejected in a separate opinion that denied the defendants' petition for reargument before the Second Circuit. See United States v. Joyner, 313 F.3d 40, 44 (2d Cir. 2002)("Joyner II"). Petitioner's petition for a writ of certiorari to the United States Supreme Court was denied on January 12, 2004. Atkinson v. United States, 540 U.S. 1127 (2004).

Petitioner then attempted to institute the instant action with the aid of Godfrey G. Brown, Esq., an attorney not admitted to practice law in the United States District Court for the Northern District of New York. According to Petitioner, Mr. Brown was repeatedly advised of the one year statute of limitations period for Section 2255 motions, and was told that the limitations period expired on January 12, 2005. See dkt. # 9; # 17. Despite these warnings, Attorney Brown neglected

to commence the instant action by January 12, 2005 and, instead, commenced the action on February 28, 2005. See dkt. # 1. Shortly thereafter, Attorney Brown abandoned the case. See April 20, 2005 Order to Show Cause, dkt. # 7; May 12, 2005 Decision and Order, dkt. # 10.[1]

The instant § 2255 motion rests primarily on claims that Petitioner's constitutional rights have been violated. Specifically, Petitioner argues that (1) in light of the holdings of Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004), his constitutional rights to a jury trial and due process of law were violated when he was punished upon facts that were neither submitted to a trier of fact nor proven beyond a reasonable doubt; and (2) his constitutional right to effective assistance of counsel was violated when trial counsel failed to (a) communicate and discuss a plea offer with him, (b) conduct adequate pre-trial investigation, (c) file a severance motion, (d) allow Petitioner to testify on his own behalf, and (e) move for a downward departure at sentencing. The Government has opposed the motion, arguing that it is: (1) barred by the applicable statute of limitations; (2) procedurally barred; and (3) lacking in any substantive merit. Petitioner has filed a *pro se* Reply Memorandum of Law addressing the statute of limitations argument, see dkt. # 17, and requested the appointment of counsel. The Court will address these arguments *seriatim*.

---

[1] Mr. Brown failed to respond to inquires from the Court Clerk's Office regarding the status of his admission to practice law in this Court, and then failed to respond to an Order to Show Cause from this Court. See April 20, 2005 Order to Show Cause [dkt. # 7]; May 12, 2005 Decision and Order [dkt. # 10]. Mr. Brown was sanctioned for his conduct and was disqualified from representing Petitioner because he is not admitted to practice in this Court. See May 12, 2005 Decision and Order [dkt. # 10]. It appears that Mr. Brown has failed to pay the court-ordered sanction.

### III. DISCUSSION

**A. Timeliness**

A one-year statute of limitation applies to a federal § 2255 motion and runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255 (imposing the Anti-Terrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year period of limitation for motions for collateral relief under § 2255);[2] Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998)(One of the purposes of the AEDPA was to create a statute of limitations for the "... filing of petitions for writs of habeas corpus and motions to vacate federal sentences."). Petitioner's conviction became final on January 12, 2004 when his petition for a writ of certiorari to the United States Supreme Court was denied. Thus, as Petitioner correctly recognizes, he had until January 12, 2005 to commence his action. Nonetheless, and as indicated above, the action was not commenced until February 28, 2005 when Attorney Brown filed Petitioner's papers with the Court Clerk's Office. See Fed. R. Civ. P. 3;[3] Fed. R. Civ. P. 5(e).[4]

---

[2] The AEDPA became effective on April 24, 1996. A Section 2255 motion filed after April 24, 1996 is subject to a one year period of limitation which runs from the latest of four specified events laid out in § 2255. These are (1) the date on which the judgment becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence. 28 U.S.C. §2255. Petitioner has not asserted, nor does the record support, any argument to apply subsections (2)-(4) of Section 2255.

[3] Rule 3 provides: "A civil action is commenced by filing a complaint with the court."

[4] Rule 5(e) provides in pertinent part:

(e) Filing with the Court Defined.

The filing of papers with the court as required by these rules shall be made by filing them <u>with the clerk of the court</u>, except that the judge may permit the papers to be filed with the judge, in which

(continued...)

In opposition to the Government's untimeliness argument, Petitioner contends that he is saved by the "prisoner mailbox" rule because Attorney Brown supposedly gave a copy of the Section 2255 motion to a United States Marshal in the Eastern District of New York at 5:15 p.m. on January 12, 2005.[5] This argument is without merit.

Assuming that all the papers filed on February 28, 2005 in this Court were delivered to the Office of the United States Marshal for the Eastern District on January 12, 2005, the prisoner mailbox rule still would not apply. As the Second Circuit has noted:

> The Supreme Court held in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), that a prisoner appearing *pro se* satisfies the time limit for filing a notice of appeal if he delivers the notice to prison officials within the time specified. This "prison mailbox" rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court. See id. at 270-71, 274, 108 S.Ct. 2379.

Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). Under the prisoner mailbox rule, "a federal habeas petition is deemed properly filed when *the prisoner* delivers the petition *to a prison official for mailing*." Fernandez v. Artuz, 175 F. Supp.2d 682, 684 (S.D.N.Y. 2001)(emphasis added, interior quotes and citations omitted), aff'd, 402 F.3d 111 (2d Cir. 2005); see also Adeline v. Stinson, 206 F.3d 249, 251 n.1 (2d Cir. 2000).

---

[4](...continued)
event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk. A court may by local rule permit papers to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, which the Judicial Conference of the United States establishes.

Fed. R. Civ. P. 5(e)(emphasis added).

[5] In support of this argument, Petitioner submits a copy of his motion papers that appears to have a "received" stamp from the United States Marshal's Office for the Eastern District of New York dated January 12, 2005.

5

Here, Petitioner was represented by counsel and his papers were not presented to prison officials for mailing. Petitioner's counsel, undisturbed by the restraints that would beset an incarcerated individual, had control over where and when the petition would be filed, and had the freedom and responsibility to follow the Federal Rules of Civil Procedure. He failed to do so. Attorney Brown's "filing" of the documents with the United States Marshal's Office for the Eastern District of New York did not commence a civil action, and, therefore, did not stop the expiration of the statute of limitations. Fed. R. Civ. P. 3; Fed. R. Civ. P. 5.[6] The fact that Petitioner might have presented his papers to his attorney in a timely fashion does not save his claim. See Hutzenlaub v. Portuondo, 325 F. Supp.2d 236, 238 (E.D.N.Y. 2004)("The Petitioner's argument that the 'prisoner mailbox rule' renders his petition timely because he believed that the limitations period was tolled upon his mailing his affidavit in support of his habeas petition to his attorney, is without merit.").

Petitioner also argues that he is entitled to equitable tolling of the statute of limitations because he acted with due diligence within the period of limitations, and that his attempts to have his action timely commenced were frustrated by Attorney Brown's negligence. This argument also lacks merit. While a court may equitably toll the statute of limitations in those "rare or extraordinary circumstances" where the prisoner acted with reasonable diligence throughout the period he desires to toll but uncontrollable circumstances prevented him from timely filing, Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.)(*per curiam*), cert. denied, 531 U.S. 840 (2000), the Second Circuit has held that attorney error is not an "extraordinary circumstance" under the equitable tolling doctrine. Smaldone v. Senkowski, 273 F.3d 133, 138 (2d

---

[6] The United States Marshal for the Eastern District of New York is not an agent of, or a repository for, the Court Clerk's Office for the United States District Court for the Northern District of New York, nor does a United States Marshal have a duty to mail to any court legal documents that an attorney might decide to drop off at the last minute.

6

Cir. 2001); see also Geraci v. Senkowski, 211 F.3d 6, 9 (2d Cir. 2000)(a mistake by counsel as to the calculation of time remaining to file a petition did not amount to "extraordinary or unusual circumstances that would justify equitable tolling fo the AEDPA's one-year limitation period."); Ford v. Brunelle, 2005 WL 3115868, at * 2 (W.D.N.Y. Nov. 22, 2005)("It is clear, however, that Petitioner's counsel's mistake is not a basis to equitably toll the statute of limitations."). Assuming the truth of Petitioner's allegations regarding his communications with his attorney, it is clear that Attorney Brown made a monumental legal error by failing to commence the action in a timely fashion. That error, however, does not warrant equitable tolling.

Further, Petitioner's assertions do not demonstrate that he acted with all reasonable diligence during the period he seeks to toll but that extraordinary circumstances beyond his control prevented him from timely filing his petition. See Smaldone, 273 F.3d at 138 ("To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time.")(citations omitted); Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001)(To establish "extraordinary circumstances," a petitioner "must 'demonstrate a causal relationship between the extraordinary circumstances ... and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'")(quoting Valverde, 224 F.3d at 134); Smith, 208 F.3d at 17 (To be entitled to equitable tolling, a petitioner must show "that extraordinary circumstances prevented him from filing his petition on time" and that he "acted with reasonable diligence throughout the period he seeks to toll.").

According to Petitioner, he was told on January 10, 2005 that Brown would electronically

file the action that day. See Reply Mem L. p. 2.[7] However, on January 11, 2005 Brown informed Petitioner that he could not electronically file the documents because Brown did not have an electronic filing password in the Northern District of New York and had not completed sufficient continuing legal education credits to be admitted in this Court. Id. pp. 2-3. Petitioner's family members became involved and repeatedly contacted the Court Clerk's Office during the day of January 11, 2005 and the morning of January 12, 2005, learned that the action had not been commenced, and made repeated calls to Attorney Brown about the lack of a proper filing on Petitioner's behalf. Id. p. 3. While Petitioner himself could not have physically filed the papers in the Northern District of New York, Brown or Petitioner's family members could have done so by either sending the papers by overnight delivery on January 11, 2005, or by driving them to the Clerk's Office on January 12, 2005.[8] There is no evidence that anything prevented Brown or Petitioner's family members from using an overnight delivery service on January 11, 2005, or from driving the documents to the Court Clerk's Office on January 12, 2005. Thus, there is no factual basis presented that would warrant equitable tolling in this case. Accordingly, the Court finds that Petitioner's § 2255 action is time barred and subject to dismissal on this basis.

### B. Substantive Arguments

Assuming, *arguendo*, the instant action is not time barred, the motion fails on the merits for the following reasons.

---

[7] Petitioner has verified the truth of the allegations contained in the Reply Memorandum of Law, so it is the functional equivalent of an affidavit.

[8] By the afternoon of January 11, 2005, it should have been clear to Petitioner, Brown, and Petitioner's involved family members that some effort needed to be made to physically transport the documents to the Court Clerk's Office for timely filing.

### **i.  Apprendi/Blakely Argument**

Petitioner first argues hat he was denied his constitutional rights to a jury trial and due process because his sentence, based upon the United States Sentencing Guidelines, took into account facts that were not presented to the jury. He bases his argument on the holdings of Apprendi, *supra*, and Blakely, *supra*. Inasmuch as Petitioner is now proceeding *pro se,* the Court interprets the argument to assert that his sentence is illegal under United States v. Booker, --- U.S. ----, 125 S.Ct. 738 (2005). See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(Pro se pleadings should be read liberally and interpreted to "raise the strongest arguments they suggest."). However, neither Blakely nor Booker apply retroactively to cases on collateral review. See Guzman v. United States, 404 F.3d 139, 140 ("We now hold that Booker does not apply retroactively to cases on collateral review...."), 144 ("For the reasons stated above, Booker is not retroactive, *i.e.,* it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued.")(2d Cir. 2005); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004)(Blakely not retroactively applicable to cases on collateral review); Garcia v. United States, No. 04-cv-0465, 2004 WL 1752588 (N.D.N.Y. Aug. 4, 2004)(McAvoy, S.J.)(Blakely does not apply retroactively to cases on collateral review.). Therefore, to the extent Petitioner's first argument is based upon either Blakely or Booker, it is without merit.

To the extent that Petitioner might be asserting some Apprendi argument separate from the Blakely/Booker argument, the record indicates that Petitioner did not raise this issue on direct appeal although Apprendi arguments were raised by his co-defendants. See Joyner II, 313 F.3d at 45-46. It is well settled that available claims not raised on direct review will be barred on a § 2255 motion unless the defendant can demonstrate either: (1) cause for failing to raise the issue, and

9

prejudice resulting therefrom; or (2) actual innocence. Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)(citing Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)); see Sweat v. United States, 2005 WL 3179672, at * 2 (N.D.N.Y. Nov. 29, 2005)(McAvoy, S.J.); Collins v. United States, 2005 WL 1705044, at *3 (N.D.N.Y. July 20, 2005)(McAvoy, S.J.). Petitioner presents no basis to establish cause for failing to raise an Apprendi claim, see Sweat, 2005 WL 3179672, at * 2 (discussing the "cause" element), or that his sentence somehow violated Apprendi. See United States v. Rivera, 282 F.3d 74, 76-77 (2d Cir. 2002)("Cook was also convicted of violating the 'continuing criminal enterprise' ('CCE') statute, 21 U.S.C. § 848, which carries a maximum sentence of life imprisonment. Because the district court sentenced Cook to life imprisonment based on his conviction for that count, not the § 841 count, his sentence did not offend Apprendi.").

Further, Petitioner fails to establish his actual innocence of the crimes of conviction. See Bousley v. United States, 523 U.S. 614, 623 (1998)(In order to establish "actual innocence," a movant must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."). Indeed, Petitioner has argued on one of his ineffective assistance of counsel claims (discussed *infra*) that "[h]ad the Petitioner been advised regarding a plea [offer], and the seemingly insurmountable evidence possessed by the prosecution in this case, the Petitioner would have accepted a plea." Pet. Mem. L. p. 21. Of course, he could not have pled guilty unless he was in fact guilty so his own argument defeats any "actual innocence" claim. Thus, any Apprendi claim is procedurally barred.

Finally, even if not procedurally barred, an Apprendi claim would fail on the merits. Rivera, 282 F.3d at 76-77. For these reasons, Petitioner's Apprendi/Blakley/Booker claim is dismissed.

### ii. Ineffective Assistance of Trial Counsel

Petitioner next argues that his trial counsel, James E. Banagan, Esq., was constitutionally ineffective on several grounds.[9] In order to state a Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ...defendant." United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001)(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000)(quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985)(Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.")(citing Strickland, 466 U.S. at 688-89). Furthermore, the Court must evaluate counsel's performance from

---

[9] During pre-trial proceedings and until approximately one month before trial, Petitioner was represented by Michael L. Desautels, Esq. Mr. Desautels was replaced by James E. Banagan, Esq. who represented Petitioner through sentencing. Petitioner was represented on appeal by Marjorie M. Smith, Esq. Petitioner has made no claims against Attorneys Desautels or Smith.

his perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998)(citing Strickland, 466 U.S. at 689).

To satisfy the second prong of Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### a. Communication of Plea Offer

Petitioner's first ineffective assistance of counsel argument is that Attorney Banagan was ineffective for failing to inform him of the existence of a plea offer made by the Government. While "[t]he right to effective assistance of counsel encompasses the accused's right to be informed by his attorney as to the relative merits of pleading guilty and proceeding to trial," Roccisano v. Menifee, 293 F.3d 51, 59 (2d Cir. 2002), Petitioner's argument fails under both prongs of the Strickland test.

First, Petitioner's evidence establishes that his initial attorney, Attorney Desautels, communicated the Government's plea offer to Petitioner and Petitioner rejected it in favor of proceeding to trial. The letter from Attorney Desautels to Petitioner memorializing that the plea offer was made was contained in the file transferred to Attorney Banagan. Under these circumstances, it was not below an objective standard of reasonableness for Attorney Banagan to prepare for, and proceed with, trial without discussing the rejected plea offer.[10]

---

[10] Petitioner does not assert (nor does the evidence support) that another plea offer was made by the Government after Attorney Banagan entered the case. If Petitioner wanted to explore whether the rejected plea offer was still available after Attorney Banagan entered the case, nothing prevented him from bringing it up. He does not contend that he did.

Second, the Second Circuit has held that "a defendant's post conviction testimony that he would have accepted the plea is insufficient to establish prejudice." United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998). Instead, the courts have "required the defendant to come forward with additional objective evidence to prove that the defendant would have accepted the plea offer." Id. In light of the fact that the plea offer *was* communicated to Petitioner and rejected, his post conviction complaint that he would have accepted the plea if *trial* counsel discussed it with him is insufficient to establish the necessary prejudice to satisfy the second prong of Strickland. See fn. 10, *supra*. The claim, therefore, is dismissed.

### b. Pre-Trial Investigation

Petitioner next argues that trial counsel was ineffective for failing to conduct adequate pre-trial investigation relating to Government witnesses Shatima Turner and Yolanda Turner, and to the authenticity of a rental agreement. In evaluating attorney performance, "every effort [must] be made to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 694. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A petitioner's "[b]ald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably." Sheedy v. United States, 1997 WL 394664 at *9 (N.D.N.Y. 1997)(citing Strickland, 466 U.S. at 689); see Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(a mere conclusory allegation that counsel was ineffective fails to "establish that his counsel's performance was deficient [and]....fails to overcome the presumption [under Strickland] that counsel acted reasonably...."). "A convicted defendant making

13

a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

It is not entirely clear what argument Petitioner makes with regard to Shatima Turner. He asserts merely that Attorney Banagan did not prepare properly for Shatima Turner's testimony, and that Turner has now presented an affidavit attesting that she lied with regard to portions of her testimony about the activities of co-defendant Michael Barrett. Assuming that the argument is that Attorney Banagan was constitutionally ineffective for failing to ferret out impeachment material for this witness, the claim fails under both prongs of Strickland.

Attorney Banagan entered the case four weeks prior to trial and performed competently during the trial. Shatima Turner was cross-examined about her veracity and other perjurious statements. See Joyner I, 201 F.3d at 82. Her affidavit dated April 1, 2004 indicates that she lied about Barrett's activities because she was romantically rebuked by him and because she felt that if she testified against Barrett, the Government would treat her more leniently. Apart from the fact that Shatima Turner's affidavit does not mention purported false testimony about Petitioner (or any reason to testify falsely about Petitioner's activities), there was no basis upon which a reasonable competent attorney for Petitioner would have explored the bias of Shatima Turner toward Barrett. See e.g. Barrett v. United States, 2005 WL 1520849, at * 6 (N.D.N.Y. June 27, 2005)("First, assuming *arguendo* that Turner committed perjury for the reasons asserted, there is no indication that anyone, including counsel [for Barrett], was even remotely aware of these motivations at the time of trial. Indeed, Petitioner's proof indicates that Turner revealed her motivations long after the

14

second trial ended."). The hindsight gained from Turner's recent admission of perjury does not serve to demonstrate that trial counsel performed below a reasonable standard of competence in failing to explore a possible motive Shatima Turner might have to lie about a co-defendant's activities.

The claim also fails on the second prong of the Strickland test. Assuming that Shatima Turner lied with regard to Barrett's activities, there was still a wealth of evidence against Petitioner. Shatima Turner, who *was* cross-examined on her veracity, was but one of a bevy of witnesses in this case, and the evidence against Petitioner (as he now acknowledges) was overwhelming. See United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002)(In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence."). Thus, even if Shatima Turner's bias and lies could have been exposed at the time of trial, Petitioner has not established that the results of the trial would have been different. Thus, the claim as to Shatima Turner fails under the second prong of the Strickland test. See Slevin v. United States, 1999 WL 549010, at *5 (S.D.N.Y. 1999)(a habeas petitioner must show how counsel's failures prejudiced the outcome of the trial), aff'd, 234 F.3d 1263 (2d Cir.2000).

The same conclusion is reached with regard to Yolanda Turner. Like Shatima Turner's affidavit, Yolanda Turner's affidavit was submitted in Michael Barrett's Section 2255 action. Although Petitioner asserts in his moving Memorandum of Law (prepared by Attorney Brown) that Yolanda Turner "signed [an] affidavit[] admitting that [she] had testified dishonestly at the Petitioner's trial," Pet. Mem. L., p. 23, Yolanda Turner makes no such claim in her affidavit. Accordingly, any claim premised upon Yolanda Turner's purported perjury is wholly unsupported

and is dismissed.

Petitioner's next argument, that Attorney Banagan was constitutionally ineffective because he failed to find a handwriting expert who would have testified that Petitioner did not sign the rental agreement for an apartment used to store controlled substances, is also without merit. Assuming *arguendo*, that Petitioner's counsel acted in a constitutionally ineffective manner with regard to this issue, the claim fails on the second prong of Strickland. Due to the substantial and compelling evidence demonstrating his guilt, Petitioner cannot demonstrate that *but for* this inaction by trial counsel the result of the trial would have been different. Strickland, 466 U.S. at 694; *see* Slevin, 1999 WL 549010. Indeed, in light of the overwhelming evidence of Petitioner's guilt, he has failed to demonstrate that he would have been acquitted if it had been established that his handwriting did not appear on the rental agreement.

### c.     Severance Motion

Petitioner's next argument is that Attorney Banagan was constitutional ineffective for failing to file a severance motion. Again, the motion is wholly without merit. Such a motion, if it were made, would have been rejected for two reasons. First, by the time that Attorney Banagan entered the case, the time for motions had passed.[11] The motion would have been rejected as untimely, and, therefore, it was not professionally unreasonable for Attorney Banagan *not* to make such a motion. Second, and assuming *arguendo* that the Court would have addressed the substance of such a motion if made (or if it was made by Petitioner's first attorney), it would have been denied for the

---

[11] Mr. Banagan entered the case on February 28, 1996, four weeks prior to trial, at which point the time to file Omnibus Motions had long expired. This Court had already rendered decisions on all Omnibus Motions on February 23, 1996 in open court, which included denying the severance motions of co-defendants.

16

same reasons that the co-defendants' similar motions were rejected. See Joyner I, 201 F.3d at 75-76 (upholding joinder). Thus, the claim fails under both prongs of the Strickland test.

### d. Petitioner's Failure to Testify

Petitioner also argues that Attorney Banagan was constitutionally ineffective for failing to allow Petitioner to testify on his own behalf at trial. "It is well-settled that part of an attorney's duty to provide effective assistance includes the burden of ensuring that a defendant is informed of the nature and existence of his right to testify." Botero v. United States, 2005 WL 1606911, at * 2 (D. Conn. July 6, 2005)(citing Chang v. United States, 250 F.3d 79, 83 (2d Cir. 2001); Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997)). To succeed on this type of ineffective assistance of counsel claim on a collateral attack, the Petitioner bears the burden of demonstrating that, if he took the stand, the results of the trial would probably have been different. Chang, 250 F.3d at 83-86; Rega v. United States, 263 F.3d 18, 21 (2d Cir. 2001); Manselli v. United States, 2005 WL 2709168, at * 5 (S.D.N.Y. Oct. 19, 2005); Botero, 2005 WL 1606911, at * 2.

Here, Petitioner's affidavit says nothing more than that he informed Attorney Banagan that he wanted to testify and that Banagan made the decision that he would not testify. Like in Manselli, "Petitioner gives no details or summary about his proposed testimony and how that would have affected his trial. He has not made an adequate showing that there is a reasonable probability that the jury would have acquitted him if he had testified." Manselli, 2005 WL 2709168, at * 5. His moving Memorandum of Law does no better, merely asserting: "Had the Petitioner been permitted to testify, he would have [NLPA is not in possession of correspondence regarding the content of Mr.

17

Atkinson's proposed testimony.]" Pet. Mem. L. p. 27 (*sic*, brackets in original). [12]

Clearly, Petitioner has not established "a reasonable probability that [his] testimony would have led to an acquittal." Rega 263 F.3d at 21. Given this, and in light of the substantial evidence against him, the claim is dismissed.

### e.     Downward Departure

Finally, Petitioner argues that Attorney Banagan was constitutionally ineffective for failing to move for a downward departure at sentencing on the basis of Petitioner's purported "exhaustive rehabilitation prior to being charged, and continued ... after his arrest and conviction."  In this regard, Petitioner notes that after he was released from state custody in 1994, he obtained a job, and, at certain times around when he was arrested on the underlying charges, he held two jobs and paid child support. Pet. Mem. L., pp 30-31.  Petitioner also argues that his "exhaustive rehabilitative efforts" were demonstrated by his "drug free urine samples and making weekly phone calls to his pre-trial officer" while on pre-trial release. Id. p. 31. The Government argues that Petitioner did not show rehabilitation after being released from State custody, but instead became a bigger drug dealer then he had been before his State incarceration.  See Gov't Opp. Mem. L. p. 16.  In addition, the Government points out that Petitioner's rehabilitation argument was rejected by this Court on July 17, 2000. See July 17, 2000 Order in 95-CR-286 [dkt. # 1835].  Thus, the Government contends that there was no good faith factual basis to make an "extraordinary rehabilitation" downward departure motion and, therefore, Attorney Banagan did not act in a professional incompetent manner by failing to make it.

---

[12] The Court has no idea what the acronym NLPA stands for, or what counsel was referring to in the bracketed portion of this sentence.

The Court agrees with the Government. Even accepting Petitioner's allegations as true, he did not have the makings of a successful downward departure on the grounds of extraordinary rehabilitative efforts. Holding a job or two, paying child support, giving drug free urine samples during pre-trial release, and calling one's pre-trial services officer as directed do not amount to extraordinary circumstances that removes the case from the heartland of typical cases to constitute a meritorious basis for such a departure. See United States v. Workman, 80 F.3d 688, 701 (2d Cir. 1996); United States v. Maier, 975 F.2d 944, 948 (2d Cir. 1992); U.S. v. Rodriguez, 724 F. Supp. 1118 (S.D.N.Y. 1989). Rather, they are efforts that law abiding citizens regularly undertake, and that are undertaken by many defendants appearing before the Court. Attorney Banagan's conduct in not moving for a downward departure on this grounds does not fall below an objective standard of reasonableness. Further, assuming that the failure to make the motion on this ground could be considered to fall below an objective standard of reasonableness, Petitioner cannot demonstrate prejudice from this inaction. Therefore, the claim on this ground is dismissed.

### C. Appointment of Counsel/ IFP Status

Inasmuch as Petitioner fails to raise any issues on the instant motion that would entitle him to relief, his motion for appointment of counsel is denied. United States v. Doe, 2005 WL 167601, at * 1 (S.D.N.Y. Jan. 25, 2005); Toron v. United States, 281 F. Supp.2d 591, 593 (E.D.N.Y. 2003); see 18 U.S.C. § 3006A(a)(2)(B) ("Whenever the United States magistrate or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who ... is seeking relief under section 2241, 2254, or 2255 of title 28." ). Petitioner's motion to proceed *in forma pauperis* is denied as moot.

### III. CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his petition is **DISMISSED**. His motion for appointment of counsel is **DENIED**, and his motion to proceed *in forma pauperis* is **DENIED as moot**.

**IT IS SO ORDERED**.


DATED:December 28,2005


Thomas J. McAvoy
Senior, U.S. District Judge